**UNITED STATES of America, Appellee,**

v.

**John A. ROBERTS, Appellant.**

**No. 81–1964.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1982.

Decided April 28, 1982.

Rehearing Denied May 25, 1982.

Thomas E. Dittmeier, U. S. Atty., Kathianne Knaup, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Thomas B. Weaver, St. Louis, Mo., for appellant; Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., of counsel.

Before HENLEY, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

John Anthony Roberts here appeals his conviction of one count of conspiracy to distribute lysergic acid diethylamide (LSD), in violation of 21 U.S.C. §§ 841(a)(1) and 846, and three counts of distribution of LSD, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Roberts was tried by a jury and sentenced to five years' imprisonment on Count I, five years on Count II with a special parole term of five years to follow and run consecutively to the sentence imposed on Count I, five years on Count III with a special five-year parole term to follow and run concurrently with Count II, and five years on Count IV with a special five-year parole term to follow and run concurrently to Counts II and III. The aggregate sentence is thus ten years' imprisonment with a five-year special parole term to follow. We affirm the conviction and sentence.

## I.

Pamela Grant, working as an undercover agent for the Illinois Department of Law Enforcement, purchased LSD from a Morris Smith on at least four occasions. Roberts was convicted after the jury found that he supplied the drugs to Smith for the sales.

As found at trial, Smith sold one hundred doses of LSD to Grant on April 8, 1981, five hundred doses on April 15, 1981, another five hundred on April 27, 1981, and two thousand doses on May 28, 1981. Before each of the first three sales, Smith called Roberts to arrange the pickup of the LSD from him. Smith would then go to Roberts's house and pick up the drugs. He would not pay Roberts for the drugs until he had received payment from Grant. Once Smith had exchanged the drugs with Grant for money, he would return to Roberts's house and pay Roberts for the drugs, keeping a cut of the money for himself.

Smith arranged to make another sale to Grant. It was to take place on May 28, 1981, at a Jack-in-the-Box restaurant. As usual, Smith went to Roberts's house to pick up the drugs. Apparently Smith had a conversation with Roberts at this time. Smith testified that Roberts said he wanted to take the LSD to the Jack-in-the-Box himself because it was too big a package (2,000 doses) for Smith to handle. According to Roberts, however, their conversation concerned the fact that Smith owed him one hundred dollars. Roberts testified that it was decided that he would go to the Jack-in-the-Box to collect the money and give Smith a ride somewhere.

Smith arrived at the Jack-in-the-Box before either Roberts or Grant. Grant arrived next, and Smith got into her car with her.

Roberts then arrived at the parking lot and pulled into a parking space about three cars away from Smith and Grant. Smith got out of agent Grant's car and went over and got into Roberts's car. Smith testified that Roberts then gave him the LSD and Smith returned to Grant's car.

After Smith returned to Grant's car, he reached into his shirt pocket and handed Grant two plastic bags containing the 2,000 dosage-units of LSD. Grant then pushed a button in her car which signalled to surveil-

lance officers, who were watching from cars nearby, that the transaction had been completed.

The surveillance officers then moved in and arrested Smith and Roberts. The two were transported by the agents to the Drug Enforcement Administration (DEA) office in Clayton, Missouri.

Smith testified at trial that during this ride Roberts told him to tell the authorities that Roberts was only at the Jack-in-the-Box to collect money from Smith. One of the agents testified that he observed Roberts talking to Smith and heard Roberts say, "Just tell them that I was just coming to meet you." This same agent was allowed, over an objection, to testify that Smith, in the DEA office, confirmed what the agent had heard Roberts say in the car.

During his interrogation at the DEA office, Smith signed a statement in which he confessed to selling the LSD. Smith eventually accepted a plea offer from the Government, and pled guilty to one of the four counts of his indictment while the other three were dismissed.

## II.

The first issue presented in this appeal is whether the court[1] erred in permitting the DEA agent to testify regarding the statement made to him by Smith in the DEA office after the arrest. Roberts argues that the statement should have been excluded as hearsay. We cannot agree.

■ At the time the challenged testimony was admitted, Smith had already testified on direct examination that Roberts had told him in the car to say that he (Roberts) was only at the scene of the crime to collect money from Smith. The defense attempted to impeach Smith's credibility by suggesting that Smith implicated Roberts only because of Smith's plea bargain agreement with the Government. The DEA agent was then asked whether Smith had confirmed the story Smith gave at trial, and thus that

which the agent had just testified to hearing in the car, in the DEA office following the arrest. The agent answered that he did.

Firstly, the agent never repeated Smith's statement. Rather, he simply acknowledged that Smith had confirmed in the DEA office what the agent had heard in the car. Secondly, the testimony was offered to refute the defense's allegation that Smith implicated Roberts only as part of his plea agreement with the Government. It was not offered to prove that Roberts made the statement in the car. The offer of proof on that issue had consisted of both Smith's and the agent's direct testimony reciting what they had heard Roberts say.

## III.

The next issue presented by appellant Roberts is whether the court erred in sustaining hearsay objections to the admission of testimony regarding statements made by Smith to Roberts on May 27 and May 28, 1981. Though we feel that the evidence should have been admitted, we find that its exclusion constituted harmless error.

Roberts and two other witnesses attempted to testify regarding a purported conversation between Smith and Roberts on the morning of May 28. The witnesses, besides Roberts, were Roberts's girlfriend and another woman who rented an apartment in the building in which Roberts lived. Both of these women, apparently, were present in Roberts's apartment on the morning of May 28 when Smith came over to discuss what was to take place in the Jack-in-the-Box parking lot later that day. The women and Roberts were apparently going to testify that Smith had told Roberts that if Roberts would pick him up at the Jack-in-the-Box and give him a ride, Smith would pay back to Roberts one hundred dollars which he owed him. On the other hand, the evidence which was allowed indicated that at that meeting on the morning of the 28th Roberts told Smith that he would bring the

1. The Honorable Clyde S. Cahill, Jr., United States District Judge, Eastern District of Missouri.

2,000 doses of LSD to the parking lot himself because it was too big a package to give to Smith.

Roberts also wanted to testify about a phone call he received from Smith on May 27. Roberts testified at trial that Smith called and asked if Roberts was going to be home. The court sustained an objection on the grounds of hearsay. When the question was rephrased, Roberts testified that Smith called "to ascertain that I would be home."

Roberts argues that the excluded testimony was not hearsay because it was not offered to prove the truth of the matter asserted therein. *See* Fed.R.Evid. 801. He argues that the testimony was offered to explain the subsequent conduct of Roberts in going to the restaurant parking lot. He denies that it was offered to prove that Smith in fact owed Roberts one hundred dollars. *See United States v. Stout,* 599 F.2d 866, 869 (8th Cir. 1979).

■ We agree with Roberts that the testimony at issue here did not constitute hearsay and should have been admitted for the purpose of offering evidence as to Roberts's motive for going to the restaurant parking lot. However, we find that its exclusion was a harmless error, as the evidence of Roberts's participation in the scheme was substantial and convincing. Roberts was not prejudiced by the court's ruling.

Other evidence was admitted that Smith owed Roberts money. In addition, Roberts himself testified that he went to the Jack-in-the-Box to pick up the hundred dollars that Smith had promised him. He testified that when he saw Smith at the parking lot he asked if Smith had his money. Thus the defense's theory as to why Roberts was at the parking lot was before the jury. The testimony which was excluded was not crucial to the defense's presentation of the theory and was dubious, at best. Roberts was not prejudiced by the court's ruling.

### IV.

As his next ground for reversal, Roberts urges that the court erred in excluding as hearsay testimony regarding statements made to him by Smith on May 28 at the restaurant parking lot. Roberts contends that he wanted to explain at trial that when Smith came to talk to him that morning in his car, Smith asked him to move his car next to the one he and Grant were in, and told him that he would soon have his one hundred dollars.

Roberts argues that the testimony was not offered to prove the truth of the matter asserted but only to show Roberts's state of mind and explain his conduct in subsequently moving his car as directed. The Government argues that the testimony was hearsay and that even if it had not been offered for the truth of the matter asserted, and thus was not hearsay, Roberts was not prejudiced by its exclusion.

■ Again, we agree with Roberts that the statements were not offered to prove the truth of the matter asserted and that they were not hearsay. However, we also agree with the Government that Roberts was not prejudiced by the court's ruling. As stated earlier, the defense's theory, that Roberts went to the restaurant to pick up money that Smith owed him, was admitted into evidence. Any inferences harmful to the defense which were buttressed by the exclusion of the testimony were thereby rebutted. Thus any error in excluding the testimony at issue was eventually cured.

### V.

■ Finally, Roberts argues that the court erred in sentencing him to five years' imprisonment on each of the four counts of his indictment. As stated *ante,* Roberts's aggregate sentence was ten years' imprisonment, followed by a five-year special parole term. Roberts objects to the sentence, which is within the statutory limits, on two grounds.

The first is that he received a harsher sentence than Smith after being offered the same plea arrangement, which Smith accepted and Roberts refused. Roberts argues that his sentence, when compared to Smith's, indicates that he was penalized for

going to trial. We find no such indication in the record.

Roberts was found guilty on four counts; Smith pled guilty to one. Roberts was a supplier of drugs; Smith was merely a middleman. Roberts had a criminal record; Smith was a first offender. In other words, there are a myriad of reasons why Roberts might have received a more severe sentence than Smith. We see no indication that the sentence was based on any impermissible factors. Roberts was thirty-seven years old, had not been employed for ten years, and yet maintained a household of three teenage girls who were likewise unemployed.

Secondly, Roberts objects to his sentence on the vague grounds that the court simply did not emphasize what he considers to have been the proper factors, such as the grading of salient factors in his presentence investigation report. Roberts's objection is frivolous. The judge is given much discretion in assessing a proper penalty within statutory limits. There is no indication that that discretion was abused in this case.

Affirmed.